**Merrill HEBERT, Plaintiff–Appellant,**

v.

**LISLE CORPORATION, Defendant/Cross–Appellant.**

Nos. 95–1114, 95–1153.

United States Court of Appeals, Federal Circuit.

Nov. 5, 1996.

Rehearing Denied; Suggestion for Rehearing In Banc Declined in No. 95–1114 Dec. 16, 1996.

**1112**

Thomas S. Keaty, Keaty & Keaty, New Orleans, LA, argued, for plaintiff-appellant.

Edward W. Remus, Banner & Allegretti, Ltd., Chicago, IL, argued, for defendant/cross-appellant. With him on the brief were Kyle K. Kappes, Lawrence H. Aaronson, and Jon O. Nelson. Also on the brief was Joseph L. Lemoine, Jr., Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, of Lafayette, LA.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Mr. Merrill P. Hebert, proprietor of an automobile repair shop in Breaux Bridge, Louisiana, invented a tool for the removal and reinstallation of warped exhaust engine manifolds and obtained United States Patent No. 4,914,940 (the '940 patent). While the patent application was pending he submitted his invention to the Lisle Corporation, a manufacturer of specialty automotive tools. The submission was rejected. Lisle later commercialized a similar tool. Upon Mr. Hebert's suit for patent infringement the United States District Court for the Western District of Louisiana, pursuant to jury verdict, entered judgment[1] that the '940 patent was valid but that it was unenforceable due to inequitable conduct in the procurement of the patent in the Patent and Trademark Office (PTO). The issues of infringement and damages were tried but were not decided.

On Mr. Hebert's appeal we conclude that the judgment of unenforceability can not stand, for there was not substantial evidence that material information was withheld from the patent examiner, nor substantial evidence of intent to deceive or mislead the examiner. On Lisle's cross-appeal we affirm the district court's rulings on Lisle's conditional motions, and affirm the court's denial of attorney fees.

## I. THE INVENTION SUBMISSION

During certain automobile repairs it is necessary for the mechanic to remove the exhaust manifold in order to reach the site of the repair. However, engine heat often warps the manifold so that it is not easily removed or reinstalled. Mr. Hebert's tool, called an exhaust manifold spreader, facilitates removal and reinstallation of the warped exhaust manifold. By reusing instead of discarding the warped manifold, the cost and inconvenience of obtaining one or more replacement manifolds (depending on the type of engine) is saved.

On March 6, 1986 Mr. Hebert filed the patent application that led to the '940 patent. In early September 1987 he responded to a Lisle Corporation advertisement in a magazine directed to auto mechanics, wherein Lisle sought the submission of novel tool designs. The advertisement stated that tools submitted to Lisle's Invention Disclosure Program "may be produced and sold by Lisle Corporation under an attractive Royalty Agreement that will bring you an income for years to come" and that submission to Lisle's program was "A PROVEN SUCCESS FORMULA!"

Lisle sent Mr. Hebert an Invention Disclosure Agreement form that provided that any submission "is on a non-confidential basis" and "does not obligate LISLE in any way." Mr. Hebert through his lawyer returned the signed Agreement on September 14, 1987, with a patent drawing and other parts of his pending patent application and a model of his tool. On September 23, 1987 Lisle rejected the submission, stating that:

> [O]ver the years twelve (12) other inventors had sent in a very similar tool

---

1. *Hebert v. Lisle Corp.,* C.A. No. 92–0027 (W.D.La. Nov. 21, 1994).

idea.... Several years ago we made prototypes and gave them to area garages to see if these tools would work very well. We must not have received a very positive response because Management has not been interested in pursuing this idea.

On May 17, 1989 Lisle's Manager of Development and Engineering wrote again to Mr. Hebert:

Over the last few years we have had correspondence with you and many other inventors concerning a tool for spreading exhaust manifolds. Since we are getting ready to manufacture a tool for this application, we felt that it was important to contact all of the inventors who have submitted invention disclosures to us and let them know our final decision on this product. In general, all the ideas which we have received have been either a jack using a single thread and nut or a jack using two threads, one left hand and one right hand. Since we have received many invention disclosures indicating a need for this tool we have finally decided to manufacture a tool of the second type mentioned above.

In the letter Mr. Hebert was told that he would not receive any compensation because he was "not the first inventor in either of the above categories."

Mr. Hebert's lawyer responded on May 24, 1989, reminding Lisle of Mr. Hebert's pending patent application and warning about unauthorized use of his invention. Lisle's lawyer answered on June 7, 1989, pointing out that Mr. Hebert's disclosure was not in confidence and stating that he was "neither the first to submit the idea to the Lisle Corporation nor do we have any record of his patent rights in the invention." The letter included the following:

I also note that in 1987 you were put on notice of significant prior art relating to Mr. Hebert's invention. You were specifically advised of twelve other inventors who developed tools which appear to constitute prior art. You were also advised that Lisle Corporation made prototypes for such products and distributed them within the United States. I must only presume that

you provided all of this prior art information to the U.S. Patent Office.

These letters from Lisle were a principal basis of Lisle's charge of inequitable conduct before the PTO. Lisle's expert witness testified that Mr. Hebert was required to provide the patent examiner with this "prior art information," and that failure to do so rendered the patent unenforceable for inequitable conduct.

The jury found the patent valid, but unenforceable for inequitable conduct. The district court denied duly made post-trial motions, and this appeal followed.

## II. TRIAL PROCEDURES

At trial Lisle argued that the '940 patent was invalid based on lack of novelty, obviousness, and a public use/on-sale bar. The jury held by special verdict that the patent was valid. Lisle does not appeal the judgment of validity. However, Lisle argues that the district court unfairly restricted Lisle's presentation of its invalidity case. This argument appears to relate to Lisle's motion for a conditional new trial of the issue of validity.

Lisle states that in addition to the ten witnesses permitted by the court, Lisle asked to present eleven additional witnesses but was limited to proffering their testimony and placing it into evidence at the end of the trial. Lisle states that eight of these additional witnesses would have testified about their tool designs submitted to Lisle, in addition to the two witnesses who actually appeared on this issue. Lisle does not state that any of these omitted witnesses would have presented prior art that was not otherwise in evidence. Lisle states that the testimony of two other restricted witnesses related to damages and one related to infringement, and that Lisle did not have time to fully examine its technical expert.

The import of Lisle's strong criticisms of the trial judge's case management is not readily apparent. We take note that the trial judge conducted a four day pre-trial evidentiary hearing on all the issues and evidence and that there were extensive pre-trial submissions, in addition to the week-long trial. It appears that the testimony of the omitted

witnesses was either cumulative to testimony that was presented, or irrelevant to the appealed issues. *See* Fed.R.Evid. 403.

Lisle has not shown that the trial judge abused his discretion in managing the trial, or failed his responsibility to assure a fair trial. *See Abbott Labs. v. Brennan,* 952 F.2d 1346, 1351, 21 USPQ2d 1192, 1196 (Fed.Cir. 1991) ("It is improper on appeal to disturb a district court's trial management, absent a clear abuse of judicial discretion."), *cert. denied,* 505 U.S. 1205, 112 S.Ct. 2993, 120 L.Ed.2d 870 (1992). Lisle has not shown that it was prejudiced by the limitation of the number of its witnesses, or that the court did not allot sufficient time for Lisle to present its position.

 Relying in part on its objections to the management of the trial, Lisle appeals from the district court's denial of its motion for the provisional grant of a new trial of patent validity should the Federal Circuit reverse the judgment of unenforceability, thus requiring retrial of the issue of infringement. Lisle argues that in order to assure that the patent claims are interpreted the same way for validity and for infringement, validity must be retried if infringement is retried.

Lisle points out that it objected to the jury instruction that the verdict questions concerning infringement and damages should not be answered if the jury found the patent to be either invalid or unenforceable. We share this concern, for all of these issues were tried and could have been decided, possibly avoiding a retrial. *See Stratoflex v. Aeroquip Corp.,* 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed.Cir.1983) (when issues of both patent validity and infringement are raised, both should be decided at trial). However, the soundness of Lisle's objection does not entitle Lisle to retry the issue of validity.

The issue of validity was tried, the verdict was sustained on post-trial motions, and is not appealed. Thus the issue was finally decided as between these parties. There is no automatic entitlement to a new trial of validity because infringement must be retried. *Cf. W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1277, 6 USPQ2d

1277, 1281 (Fed.Cir.1988) (prior appellate decision of validity applies on retrial of infringement). Although there may be circumstances in which, on the particular facts and in the interest of justice, retrial of an unappealed issue would be warranted when other issues are retried, the policy of finality is of great weight when an issue was fully and fairly tried and decided and not appealed. The losing party does not acquire a stronger claim to a new trial of an issue by omitting to appeal its merits.

The district court did not abuse its discretion in declining to grant a provisional new trial of the issue of validity. That decision is affirmed.

## III. INEQUITABLE CONDUCT

### A. THE JURY QUESTION

 There are a variety of ways in which the district court may choose to handle the issue of inequitable conduct during a jury trial, as the Federal Circuit has recognized. Some courts have reserved the entire issue of inequitable conduct unto themselves; some have submitted special interrogatories to the jury on the facts of materiality and intent; and some have instructed the jury to find and weigh the facts of materiality and intent and decide the ultimate question of inequitable conduct, as in the case at bar. A procedure like that here adopted is seen in *Modine Manufacturing Co. v. Allen Group, Inc.,* 917 F.2d 538, 541, 16 USPQ2d 1622, 1624 (Fed.Cir.1990), *cert. denied,* 500 U.S. 918, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991), wherein the parties agreed to submission of the ultimate question of inequitable conduct to the jury. Absent a clear showing of prejudice, or failure to achieve a fair trial, the district court's choice of procedure will not be disturbed.

 When an ultimate question of law or fact is decided by the jury, on review it is assumed that the jury resolved the evidentiary facts as appropriate to support the verdict. On appeal the evidence is reviewed on this basis, applying the requisite standard, as stated, *e.g.,* in *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 618,

225 USPQ 634, 636 (Fed.Cir.), *cert. dismissed*, 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985):

> [The court] must determine, without substituting its views for those of the jury when resolving conflicts in the evidence, whether in light of the evidence reasonable persons could have found the facts necessary to support the jury's verdict, or whether the facts properly found can in law support the verdict.

Thus when the jury applies the law to the facts, the verdict is viewed as having resolved the material factual issues in favor of the verdict winner. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765, 9 USPQ2d 1417, 1423 (Fed.Cir.1988) ("Judges must accept the factual findings, presumed from a favorable jury verdict, which are supported under the substantial evidence/reasonable juror standard."), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989).

■ On appeal of the jury verdict of unenforceability due to inequitable conduct, we ascertain whether the presumed factual findings of material withholding and deceptive intent were supported by substantial evidence at the trial. We determine whether there was substantial evidence whereby a reasonable jury could have reached the verdict that was reached, on the entirety of the record and in light of correct instructions on the applicable law. *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978, 982, 10 USPQ2d 1338, 1341 (Fed.Cir.1989).

## B. THE LISLE LETTERS

■ In determining whether reasonable jurors could have made the findings needed to support the verdict of unenforceability due to inequitable conduct, we apply the rule established in *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 9 USPQ2d 1384 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). *Kingsdown* requires proof, by clear and convincing evidence, that material information was withheld from the patent examiner, with the intent thereby to deceive or mislead the examiner into granting the patent.

■ Lisle's expert witness testified that Mr. Hebert was required to provide the patent examiner with the information in the Lisle letters as quoted *supra*, whether or not it was prior art and whether or not Mr. Hebert had the intent to withhold the letters in order to deceive or mislead the examiner. Lisle's expert testified that "It doesn't matter whether or not the applicant was uncertain whether it was really prior art," and that it didn't matter whether Mr. Hebert acted in good faith. These were not correct statements of law.

■ To establish inequitable conduct the information that is known to the applicant and not provided to the PTO must be both material to patentability, and withheld in order to deceive or mislead the examiner. An applicant can not be held to have acted inequitably for not providing the examiner with information that was not material and that was not culpably withheld. *See Kingsdown*, 863 F.2d at 872, 9 USPQ2d at 1389 ("Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive,....")

Indeed, Lisle's patent expert did not testify that the omitted information was prior art. On cross-examination he read from his deposition, at which he stated: "I am still not able to conclusively determine that any of the earlier submissions to Lisle are, in fact, prior art." No witness, actual or proffered, filled this gap. Although Lisle's expert witness and Lisle's counsel repeatedly referred to the various submissions to Lisle as "prior art information," it was conceded that most of the submissions were made after Mr. Hebert's patent filing date. No submission was offered or described as "prior art" to the Hebert invention.

Despite the absence of any evidence that Mr. Hebert possessed information about prior art, Lisle's patent expert testified that Mr. Hebert had the obligation to submit the Lisle "prior art information" to the examiner, and that his failure to do so was inequitable conduct under the law. That was an incorrect statement of the law. As stated in *Therma–Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 996, 33 USPQ2d 1274, 1279

(Fed.Cir.1995), "[t]here can not have been culpable intent in withholding information that the inventor did not have."

■ Lisle also referred at trial to its advertisement of the accused tool, published shortly before issuance of the '940 patent. Lisle suggested that Mr. Hebert was required to tell the patent examiner of the advertisement, and that this omission was evidence of inequitable conduct. That too was incorrect. When the advertisement appeared, Mr. Hebert's patent application had been pending for more than three years. Lisle does not suggest on this appeal that the advertisement was prior art, or relevant to the examination of the '940 patent.

■ Lisle also stated that Mr. Hebert committed inequitable conduct because "he elected not to disclose the results of [a prior art] search to the Patent Office, [leaving] the task of uncovering prior art to the Patent Examiner." That was an incorrect statement of the applicant's obligation. The patent examiner is always required to conduct a prior art search. As explained in *Kingsdown*, 863 F.2d at 874 n. 8, 9 USPQ2d at 1390 n. 8, "nothing in the statute or Manual of Patent Examining Procedure would justify reliance on counsel's candor as a substitute for an examiner's duty to examine the claims."

Lisle does not state that Mr. Hebert knew, through a prior art search, of closer prior art than was cited by the examiner. Lisle mentions no prior art on this appeal, and does not suggest that there was material prior art in Mr. Hebert's search.

■ In sum, there was not substantial evidence to support findings of material withholding and the intent to deceive, as must undergird a verdict of inequitable conduct. As discussed in *Kingsdown*, 863 F.2d at 876, 9 USPQ2d at 1392, a finding of deceptive intent can not be based on mere inference or even on gross negligence; there must be "conduct, viewed in light of all the evidence, including evidence indicative of good faith, [that] must indicate sufficient culpability to require a finding of intent to deceive." Intent to deceive can not be inferred solely from the fact that information was not dis-

closed; there must be a factual basis for a finding of deceptive intent. *See Braun Inc. v. Dynamics Corp.*, 975 F.2d 815, 822, 24 USPQ2d 1121, 1127 (Fed.Cir.1992).

## C. THE APPLICATION OATH

Lisle had argued at trial that the '940 patent was invalid based on 35 U.S.C. § 102(b), which prohibits public use or sale of a patented invention more than one year before the patent application was filed. The jury found that the patent was not invalid. However, in presenting the issue of inequitable conduct Lisle stated that Mr. Hebert was required to tell the PTO that he had "used" the tool more than one year before the filing date, and that he filed a false oath in averring that he had not.

■ A holding of unenforceability based on the filing of a false oath requires that the oath was false, and made with knowledge of the falsity. *See Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 541, 16 USPQ2d 1622, 1624 (Fed.Cir.1990) ("Establishing inequitable conduct for submitting false information ... requires proof by clear and convincing evidence of two facts: that the information was material and that the patentee acted with intent to deceive."), *cert. denied*, 500 U.S. 918, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991). Knowledge of falsity is predicate to intent to deceive.

■ The relevant portion of the application oath relates to the public use/on-sale bar of 35 U.S.C. § 102(b), not to any use of an invention by the inventor during its development. At trial the facts concerning Mr. Hebert's development of his tool were generally undisputed: Mr. Hebert hand-made the first model of his tool in 1983. He modified the design, and in August 1984 he had a model built by a machine shop. He further modified the design, and in February 1985 he had another model built by a machine shop. There was a month between the making of this third model and the critical date of March 6, 1985. Mr. Hebert testified that he developed and tested his designs by using the tool whenever a warped exhaust manifold required removal and reinstallation on engines brought into his repair shop, about

three or four a year. Although Lisle argued that use of the tool on customers'·cars while the design was being developed constituted public use or on-sale events, the jury, in its verdict that the patent was, not invalid, rejected this position. This verdict has not been appealed.

There was not substantial evidence to support a jury verdict of inequitable conduct based on the filing of a false application oath. *See Kingsdown, supra; cf. Allied Colloids Inc. v. American Cyanamid Co.,* 64 F.3d 1570, 1578, 35 USPQ2d 1840, 1846 (Fed.Cir. 1995) ("In view of our holding that a public use bar is not supportable on the evidence that was adduced, the failure to tell the examiner about this purported bar can not be deemed material and culpable. . . .")

*CONCLUSION*

On the correct law, there was not substantial evidence to support findings that Mr. Hebert withheld information material to patentability or made a false oath, with the intent to deceive or mislead the patent examiner. Without such findings, the judgment of unenforceability for inequitable conduct can not stand. The judgment is reversed.

We take note of the extent to which the incorrect law was announced by a patent law expert witness. We encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science, *see Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), but markedly incorrect law. Incorrect statements of law are no more admissible through "experts" than are falsifiable scientific theories.

## IV. INFRINGEMENT

The district court ruled at the close of the evidence that the Lisle tool does not literally infringe the '940 patent. The ruling was based on the patent claims' requirement of a wrench-engaging recess in the tool's central body, and the absence of such a recess in the accused device. This ruling is not appealed by Mr. Hebert.

Lisle states that the district court should also have held that the Lisle tool does not infringe under the doctrine of equivalents, and asks us to find non-infringement on appeal, as a matter of law. Lisle argues that equivalency, like literal infringement, should be decided by construing the claims, determining thereby whether the available range of equivalents can encompass the accused device. Lisle states that *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 34 USPQ2d 1321 (Fed.Cir.) (*en banc* ), *aff'd,* —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), requires this judicial procedure.

### A. EQUIVALENCY

■■■■■ Claim construction is a question of law, and any dispute as to the meaning of claim terms is the province of the court, not the jury. *Markman, supra.* No such issue is here raised. Questions of the technologic equivalency of a claimed invention and an accused device are not questions of claim construction. They are questions of fact, and require determination by the trier of fact, based on evidence. *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.,* 62 F.3d 1512, 35 USPQ2d 1641 (Fed.Cir.) (*en banc* ), *cert. granted,* —— U.S. ——, 116 S.Ct. 1014, 134 L.Ed.2d 95 (1996). The facts of equivalency in this case have not yet been found by the trier of fact. It is inappropriate for the appellate court to make such findings *ab initio.*

■■■■ Lisle argues that the district court erred in failing to hold that the doctrine of equivalents can not apply because no equitable basis existed to invoke the doctrine. The district court did not err. As discussed in *Hilton Davis,* 62 F.3d at 1521, 35 USPQ2d at 1647–48, infringement by technologic equivalents, like literal infringement, does not have an equitable threshold. These questions of technology are objective and factual. Any prior inconsistent holdings by panels of this court have been superseded by the *en banc* decision in *Hilton Davis.*

### B. PROSECUTION HISTORY ESTOPPEL

Lisle asks this court to declare, as a matter of law, that Mr. Hebert limited the '940 patent claims during their prosecution in

such a way that they can. not be found infringed by the Lisle tool under the doctrine of equivalents. Mr. Hebert in turn asks us to declare, as a matter of law, that the '940 claims can not be subject to any asserted prosecution history estoppel because no prior art whatsoever was cited against the '940 claims. We have considered whether, in the interest of expediting further proceedings, these questions can be elucidated at this stage. We have concluded that these questions are not free of underlying factual determinations, and can not be decided in the abstract.

The claims as initially filed by Mr. Hebert were apparatus claims. During prosecution he continued to restrict the scope of his claims in response to the examiner's continuous objections. Despite these restrictions, and the absence of prior art related to exhaust manifold spreaders, no claims were allowed during almost three years of prosecution. Finally, the examiner dropped the hint that the problem was simply one of claim form: "Applicant is advised that the claims of the instant application are directed to a *tool* or *apparatus, per-se,* and, consequently, how the tool is used is of no patentable significance in these claims." Mr. Hebert's patent attorney immediately replaced the apparatus claims with method claims. As shown in the margin,[2] the claims of the '940 patent are for a method of using an apparatus. These claims were immediately allowed, although the apparatus claims having the identical apparatus description had not been allowed.

Mr. Hebert's argument is that although he had previously placed limitations in the apparatus claims, these limitations were added in order to distinguish references cited against the claims while they were in apparatus form. Mr. Hebert states that since none of the references cited against the apparatus claims was applied to the method claims—indeed no prior art was cited against the method claims—the arguments and amendments he made while his claims were in apparatus form should not limit the range of equivalents available to the method claims. He asks us to endorse the legal correctness of this position. Lisle responds that since there is no way of knowing whether the examiner would have made the same prior art rejections had the claims been initially presented in method form instead of in apparatus form, all of the amendments and arguments that were made must be viewed as creating an estoppel.

■ Both parties' positions have merit in the abstract, but neither can be decided in isolation from the facts of this case. It is of course necessary to consider not only the amendments to the claims but the reason why they were made, *Mannesmann Demag Corp. v. Engineered Metal Products Co.,* 793 F.2d 1279, 1285, 230 USPQ 45, 48 (Fed.Cir. 1986), but in so doing all aspects of the prosecution must be viewed as they would be viewed by persons of skill in the field of the invention. The method claims are not totally insulated from the previous prosecution of the apparatus claims, for it was not necessary for the examiner to repeat previous rejections if they had been satisfied. The issues raised by both sides' positions require development of the evidence, and determina-

2. Claims 1 and 2 are:

1. A method of spreading the arms of an exhaust manifold utilizing an apparatus comprising:
 (a) a central body portion having a recess at a first end therein;
 (b) a first manifold engaging member rotatably disposed within the recess;
 (c) a wrench-engaging surface recessed in the central body portion; and
 (d) a second manifold engaging member threadably attached to a second end of the central body portion such that rotating the central body portion in a first direction causes the second manifold engaging member to move outwardly away from the central body portion when the first and second manifold engaging members are held in non-rotating relationship; said method comprising:
 (i) positioning said apparatus between arms of a manifold which are to be spread; and
 (ii) rotating the central body portion to cause said second manifold engaging member to extend axially away from the first manifold engaging member and spread said arms of said manifold.
2. The method of claim 1, wherein:
each of the manifold engaging members has a recess therein which is shaped to fit a body portion of an exhaust manifold arm, the apparatus being sized to fit between adjacent arms of a manifold.

tion with the benefit of the procedures of trial.

## V. DAMAGES

Lisle states that the district court should have ruled, as a matter of law, that Mr. Hebert is not entitled to measure his damages or any portion thereof by his asserted lost profits. Lisle states that Mr. Hebert's admission that he never sold an exhaust manifold spreader bars the possibility of any measure of damages other than a reasonable royalty. The jury, after holding that the '940 patent was unenforceable due to inequitable conduct, did not reach the issue of damages. The question became moot, and the district court declined to reach Lisle's post-trial motion requesting the court to rule, as a matter of law, that Hebert was not entitled to damages measured by his assertion of lost profits. Although Lisle has renewed its request for decision of this issue it is inappropriate for us to rule, on the record before us, whether on remand Hebert would be able to prove damages based, at least in part, on lost profits. However, since this remains an issue should Hebert prevail on his charge of infringement, we state certain principles of the law of patent damages.

To measure damages by lost profits the patentee must establish, by a preponderance of evidence, that but for the infringement he would have earned the profits he asserts were lost. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507, 84 S.Ct. 1526, 1543, 12 L.Ed.2d 457 (1964); *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1580, 24 USPQ2d 1401, 1418–19 (Fed.Cir.1992). When the fact of infringement has been established, the amount of actual damages is subject to proof. *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 895 F.2d 1403, 1406, 13 USPQ2d 1871, 1874 (Fed.Cir. 1990).

Damage awards can not be based upon speculation or optimism, but must be established by evidence. As discussed in *Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1118, 40 USPQ2d 1001, 1007 (Fed.Cir.1996), damages may include lost profits due to diverted sales, price erosion, and increased expenditures caused by the infringement. *See also Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1065, 219 USPQ 670, 675 (Fed.Cir.1983). However, when the patentee asserts that lost profits are the appropriate measure, the patentee must establish to a reasonable probability that but for the infringement the patentee would have made the sales and profits that were lost due to the infringement. *State Indus., Inc. v. Mor–Flo Indus., Inc.*, 883 F.2d 1573, 1577, 12 USPQ2d 1026, 1028 (Fed. Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990); *King Instruments Corp. v. Perego*, 65 F.3d 941, 952, 36 USPQ2d 1129, 1137 (Fed.Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1675, 134 L.Ed.2d 778 (1996); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327, 5 USPQ2d 1255, 1260 (Fed.Cir.1987).

When the patentee does not seek to make and sell the invention, lost profits are not an appropriate measure of damages. In *Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 16 USPQ2d 1059 (Fed.Cir.1990) the patentee was seeking licensees and did not himself manufacture and sell the device; thus he could not obtain damages on the basis of lost profits. We noted in *Lindemann Maschinenfabrik*, 895 F.2d at 1406 n. 2, 13 USPQ2d at 1874 n. 2, that "[b]ecause [the patentee] did not compete in the sale of its invention in the United States, it did not, as it could not, seek damages on the basis of lost profits." However, Mr. Hebert states that he presented evidence of his activities directed to his intended manufacture of his tool. He states that Lisle's action in flooding this specialty market with the infringing tool denied him the opportunity to proceed to enter this market, thus depriving him of the profits he would have made. Lisle disputes these facts. Whether Mr. Hebert can meet the burden of showing that he would have manufactured the device, and earned the asserted profits, requires the attention of the trier of fact.

The adequacy of the damages measure depends on the circumstances of each case. Although it would be incorrect to bar a patentee who is not yet manufacturing the

product from proving that its actual damages were larger than a reasonable royalty, *see* 35 U.S.C. § 284 ("the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer"), the burden on a patentee who has not begun to manufacture the patented product is commensurately heavy. The damages award remains premised on the principle stated in *Aro Manufacturing*, that is, what would the patentee have earned but for the infringement. Applying this principle in *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 219 USPQ 377 (Fed.Cir.1983), the court stated:

> As a final matter we would add that the trial court may award an amount of damages greater than a reasonable royalty so that the award is "adequate to compensate for the infringement." As stated in *Panduit Corp. v. Stahlin Bros. Fibre Works, supra*, 575 F.2d at 1158, 197 USPQ at 731:
>
>> [T]he infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid. As said by this court in another context, the infringer would be in a "heads-I-win, tails-you-lose" position.

716 F.2d at 1563, 219 USPQ at 387.

Mr. Hebert bears the burden of showing that but for the infringement he would have earned the amount that he claims as damages. Whether he can meet this burden depends on the facts, and thus on the evidence. The issue requires retrial.

## VI. ATTORNEY FEES AND COSTS

The district court denied Lisle's request for attorney fees under 35 U.S.C. § 285 (in an "exceptional case" attorney fees may be awarded). The issue is mooted with our reversal of the holding of inequitable conduct, which was the basis of Lisle's request.

With respect to costs, the district court stated: "The excessive bill of costs presented by the defendant is tantamount to a penalty and will not be cast against the plaintiff. Therefore, only the costs of the jury will be cast as court costs." However, our reversal

of the holding of inequitable conduct and remand for retrial of the issue of infringement makes moot the award of costs to Lisle. *See* 10 Charles Alan Wright & Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2668 at 213–14 (1983).

Lisle's cross-appeals on these issues are denied.

## SUMMARY

The district court's judgment and rulings are affirmed, except for the judgment of unenforceability, which is reversed, and except for the award of partial costs to Lisle, which is vacated. The case is remanded for further proceedings.

Each party shall bear its costs.

*AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.*