HONEYWELL INTERNATIONAL INC. and Honeywell Intellectual Properties Inc., Plaintiffs.

v.

UNIVERSAL AVIONICS SYSTEMS CORP. and Sandel Avionics, Inc., Defendants.

No. C.A.03–242–MPT.

United States District Court, D. Delaware.

Nov. 30, 2004.

Thomas C. Grimm, Esquire and Julia Heaney, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Of Counsel: Steven D. McCormick, Esquire, Kirkland & Ellis LLP, Chicago, IL, Sarah Slover, Esquire, Mayer, Brown, Rowe & Maw LLP, New York City, for Plaintiffs Honeywell International Inc. and Honeywell Intellectual Properties Inc.

Frederick L. Cottrell, III, Esquire, Richards, Layton & Finger, P.A., Wilmington, DE, Of Counsel: William G. Todd, Esquire, Scott J. Bornstein, Esquire, Elizabeth S. Tse, Esquire, and Jennifer H. Burdman, Esquire, Greenberg Traurig, LLP, New York City, Brian A. Weinberger, Esquire, Greenberg Traurig, LLP, Phoenix, AZ, for Defendant Universal Avionics Systems Corp.

Thomas L. Halkowski, Esquire, Fish & Richardson P.C., Wilmington, DE, Of Counsel: Frank E. Scherkenbach, Esquire, Fish & Richardson P.C., Boston, MA, Howard G. Pollack, Esquire, John V. Picone III, Esquire, and Michael R. Headley, Esquire, Fish & Richardson, P.C., Redwood City, CA, for Defendant Sandel Avionics, Inc.

### MEMORANDUM ORDER

THYNGE, United States Magistrate Judge.

This is a patent infringement case. Pending before the court are Universal Avionics Systems Corp.'s ("Universal") Motions *In Limine* seeking to exclude lost

profits as a measure of damages available to plaintiffs Honeywell International Inc. and Honeywell Intellectual Properties Inc. (collectively "Honeywell"). Specifically, Universal's motions recite:

7. Honeywell should be precluded from seeking damages based on lost profits because Honeywell Intellectual Properties, Inc. [ ("HIPI") ] owns [U.S. Patent No. 4,914,436 ("the '436 patent") ], but does not manufacture a device which embodies the claims of the '436 patent; and Honeywell International does not own the '436 patent. In other words, by transferring ownership of the '436 patent to HIPI (for the purpose of deriving tax advantages), Honeywell International has transacted away its ability to recover lost-profit damages for alleged infringement which occurred after the transfer of title.

8. Honeywell should be precluded from seeking damages based on lost profits because neither Honeywell Intellectual Properties, Inc. nor Honeywell International manufactures a device which embodies the claims of the '436 patent.[1]

At a pre-trial conference held on November 19, 2004, the parties were instructed to provide the court with concurrent briefing merging the parties' respective arguments on Universal's two "lost profits" motions *in limine.*[2]

Section 284 of the patent statute provides for a patent owner to recover damages for patent infringement:

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed. Increased damages under this paragraph shall not apply to provisional rights under section 154(d) of this title.

The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.[3]

 The damage amount that may be recovered pursuant to Section 284 of the patent statute "is the amount of loss to a patentee.... A patentee may seek to recover actual damages, usually, the amount of profits actually lost, or if unable to prove actual damages, the patentee is entitled to a reasonable royalty."[4] The Federal Circuit has stated that:

[T]he recovery of lost profits by a patentee is not limited to the situation in which the patentee is selling the patented device. However, the patentee needs to have been selling some item, the profits of which have been lost due to infringing sales, in order to claim damages consisting of lost profits.[5]

---

1. D.I. 128 (Exhibit 19—Universal's Revised Motions *In Limine,* motions 7 and 8).

2. *See* D.I. 132 at 262, 265–66. The parties provided briefing on their respective positions on these motions *in limine* on November 29, 2004. *See* D.I. 140 (Honeywell's Opposition to Universal's Motion *In Limine* Regarding Lost Profits); D.I. 143 (Universal's Motion *In Limine* to Exclude Lost Profits as a Measure

of Damages and letter brief in support thereof).

3. 35 U.S.C. § 284.

4. *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.,* 926 F.2d 1161, 1164 (Fed.Cir. 1991).

5. *Poly–America, L.P. v. GSE Lining Technology, Inc.,* 383 F.3d 1303, 1311 (Fed.Cir.2004)

The Federal Circuit has stated that "a licensee generally may not sue for damages unless it has exclusive rights under a patent ...."[6] Where a licensee is an exclusive licensee the award of lost profits damages is proper.[7]

■ Universal does not argue that an exclusive licensee may not potentially recover lost profits damages. Instead, Universal argues that lost profits are not recoverable by HIPI or Honeywell International in this litigation because: (1) HIPI does not manufacture and sell commercial products and (2) Honeywell International is purportedly not an exclusive licensee under the '436 patent.[8] Plaintiffs do not argue that if Honeywell International is determined to be a non-exclusive licensee under the '436 patent that a lost profit award is appropriate. Plaintiffs argue that such damage award is appropriate in this case because Honeywell International's license from HIPI under the '436 patent purportedly confirms that Honeywell International is the exclusive licensee under the '436 patent.

Under a September 1, 1995 License Agreement (the "Licence Agreement"), originally between AlliedSignal Technologies Inc. ("ASTI") and AlliedSignal Avionics Inc. ("ASA"), ASTI granted ASA:

> [A]n *exclusive license* to use the Intellectual Property within the United States of America in the operations of its business and to make, have made, use export and sell products made therewith and services .... This grant shall *not* include the right to grant sublicenses under the Intellectual Property.[9]

The Licence Agreement defines "Intellectual Property" as:

> [A]ll intangible property rights owned by ASTI relating in any way to technology relating to electronic equipment and instrumentation for commercial and private air transport, including without limitation all patents, patent applications, trademarks, trademark applications, tradenames, servicemarks, servicemark applications, copyrights, copyright applications, trade secrets, know-how mask works, certificates, invention disclosures, concepts or ideas.[10]

Honeywell's expert confirmed that the '436 patent was one of the patents

(holding that one sister corporation, and owner of the patent-in-suit, could not recover the lost profits of a second sister corporation where the second sister corporation was not the exclusive licensee of the patent owner.); cf. *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed.Cir.1996) ("When the patentee does not seek to make and sell the invention, lost profits are not an appropriate measure of damages.").

**6.** *Id.*

**7.** *See, e.g., Pandrol USA, LP v. Airboss Railway Products, Inc.*, 320 F.3d 1354, 1369 (Fed.Cir. 2003) (concluding that a lost profits award to Pandrol Ltd (the "owner of all right, title and interest in the patents-in-suit") and Pandrol USA, LP (the exclusive licensee of the patents-in-suit) was not erroneous); *Fiskars, Inc. v. Hunt Manufacturing Co.*, 279 F.3d 1378, 1383

(Fed.Cir.2002) (affirming district court's refusal to vacate a $3 million lost profit damage award to Fiskars OY AB and Fiskars, Inc. (the owner and exclusive licensee, respectively) of the patent-in-suit.); *see also* 7 Donald S. Chisum, *Chisum on Patents* § 20.03 (Matthew Bender & Co. 2002) ("Lost profits, in the form of sales diversion, price erosion, or increased expense, are an appropriate basis for recovery when the patent owner (or an exclusive licensee) exploits the lawful exclusive rights of the patent directly by manufacture, use or sale.").

**8.** D.I. 143 at 1.

**9.** D.I. 140, Ex. G at ¶ 2.01 (first emphasis added).

**10.** D.I. 140, Ex. G at ¶ 4.01.

covered by the License Agreement.[11] On September 1, 2001, the HIPI and Honeywell International corporate entities were formed[12] and, through mergers became the successors-in-interest to ASTI and ASA, respectively. Also on September 1, 2001, an amendment to the Licence Agreement (the "Amendment") became effective by which HIPI "grant[ed] [Honeywell International] a license to utilize the Intellectual Property [defined in the September 1, 1995 License Agreement] on the same terms and conditions set forth in the [Licence] Agreement."[13]

Universal reiterates that the Licence Agreement states that "[t]his grant shall *not* include the right to grant sublicenses under the Intellectual Property"[14] and supports its argument that "Honeywell International is not an exclusive licensee, nor is it the sole licensee, under the '436 patent"[15] by pointing out that licenses were issued to Goodrich and Thales/ACSS which included the '436 patent technology. Universal contends that "Honeywell International surrendered its exclusivity when HIPI licensed the '436 [patent] to Goodrich and Thales."[16]

The court notes that Universal apparently concedes that prior to the Goodrich and Thales licenses Honeywell International *was* an exclusive licensee. of the '436 patent technology. That acknowledgment means that, as an exclusive licensee, lost profits could potentially be proven for the time-period prior to the effective date of the Goodrich license in, early 1993.[17] The court determines, however, that the Goodrich and Thales licenses did not result in Honeywell International's surrender of the exclusivity recited in the License Agreement.

Contrary to Universal's assertion that "*HIPI* licensed the '436 [patent] to Goodrich and Thales," thereby stripping Honeywell International of its exclusive-licensee status, Honeywell International was a party of each of those licenses, along with HIPI (in the Goodrich license) and for itself and on behalf of HIPI (in the Thales license).[18] The License Agreement clearly states that Honeywell International (f.k.a.ASA) was granted "an exclusive license to use the Intellectual Property [including the '436 patent]."[19] Nowhere does the License Agreement indicate that such exclusivity expires upon the grant of sub-

---

11. *See* D.I. 143, Ex. 7 at 193 (Transcript of August 10, 2004 deposition of Julie Davis).

12. *See* D.I. 143, Ex. 3 (Subscription and Shareholder Agreement).

13. D.I. 143, Ex. 4. The Amendment also states that "[a]ll other terms and conditions of the [Licence] Agreement shall remain in full force and effect." *Id.*, Ex. 4 at ¶ 3.

14. D.I. 143 at 4 (quoting D.I. 143, Ex. 2 at ¶ 2.01 (emphasis in original)).

15. D.I. 143 at 4.

16. D.I. 143 at 5. .

17. *See* D.I. 143, Ex. 5 (Goodrich Settlement and License Agreement and Mutual Release).

18. *See* D.I. 143, Ex. 5 at 1 ("This Settlement and License Agreement and Mutual Release

(the "Agreement") is effective as of the date of signature hereto, and is made by and among: Honeywell International Inc.... Honeywell Intellectual Properties Inc ... and Goodrich Corporation ... Goodrich Avionics Systems, Inc....."); *id.*, Ex. 6 at 1 (This Settlement and Licensing Agreement and Mutual release (the "Agreement") is entered into on July 27, 2004 and effective as of this day ... among: HONEYWELL INTERNATIONAL INC. ("Honeywell"), ... acting on its behalf as well as on behalf of its subsidiaries including without limitation HONEYWELL INTELLECTUAL PROPERTIES INC. and Affiliates, and THALES S.A.... AVIATION COMMUNICATION & SURVELLIENCE SYSTEMS, LLC ....).

19. D.I. 140, Ex. G at ¶ 1.01.

licenses covering the Intellectual Property. The License Agreement recites only two events that it may case the termination of the agreement:

a) upon the declaration of bankruptcy or insolvency of either party; or

b) for breach by either party of any material provision of the Agreement if written notice of breach has been given and the breach has not been cured within sixty days of the receipt of such notice.[20]

Although the License Agreement states that "[t]his grant shall *not* include the right to grant sublicenses under the Intellectual Property,"[21] Honeywell International *and* HIPI were both parties to the Goodrich and Thales licenses. The statement that Honeywell International was not granted the right to grant sublicenses under the Intellectual Property does not require a reading of that language as forbidding Honeywell International *and* HIPI from jointly granting sublicenses or for Honeywell International to grant sublicenses on behalf of HIPI (or with HIPI's consent), which the Goodrich and Thales licenses indicate did, in fact, happen. Reading that language to merely prohibit Honeywell International from *unilaterally* granting sublicenses harmonizes the explicit grant "exclusive license" to Honeywell International with the fact that sublicenses were granted by Honeywell International and HIPI.[22] Therefore, the court determines that Honeywell International is an exclusive licensee of the '436 patent technology.

For the reasons stated above,

IT IS ORDERED THAT:

Universal Avionics Systems Corp.'s Motions *In Limine* to Exclude Lost Profits as a Measure of Damages (D.I. 128 (Motions *In Limine* # 7 and # 8) and D.I. 143) are **DENIED.**

---

20. D.I. 140, Ex. G at ¶ 5.03.

21. D.I. 140, Ex. G at ¶ 2.01.

22. Furthermore, no evidence has been presented, nor any argument made, that the grant of licenses by Honeywell International (and HIPI) to Goodrich and Thales was a breach of the Licence Agreement under ¶ 5.03 which could have led to the termination of the Licence Agreement, and the exclusive license granted to Honeywell International therein. The court also notes that in *Invacare Corp. v. Ortho–Kinetics, Inc.,* 155 F.3d 573, 1998 WL 380998, at *3 (Fed.Cir.1998) (unpublished) the Federal Circuit affirmed a district court award of lost profits damages to an exclusive licensee, OKI, who had granted eleven sublicenses to the patent-in-suit. There, the defendant argued "that OKI is not an exclusive licensee because [the patent owner] continued to grant licenses under the patent ...." *Id.* The Federal Court determined that "OKI holds an exclusive license under the patent and thus has standing to receive lost profits damages as a co-complainant with ... the patentee. The bare fact that [the patentee] signed each sub-license along with OKI does not undermine the otherwise uncontested exclusivity of OKI's patent license. Rather, [the patentee's] participation in the licensing activity would tend to support [defendant's] argument that OKI held merely a non-exclusive license only if he had entered into licenses *without* OKI's participation." *Id.* (emphasis in original). To be clear, the court does not base its determination of Universal's motion *in limine* on the unpublished *Invacare* opinion, but merely makes footnote-reference to *Invacare* to illustrate an exclusive licensee who did not lose that exclusive-licensee status as the result of jointly granting sublicenses with a patent owner.