MAYER, Circuit Judge,
dissenting-in-part.
Because Wechsler has presented a valid legal theory founded on factual conclusions supported by substantial evidence, I dissent from the court’s reversal of the jury’s lost profits award.
“To recover lost profits damages, the patentee must show a reasonable probability that, ‘but for’ the infringement, it would have made the sales that were made by the infringer.” Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed.Cir.1995) (en banc) (citations omitted); see also Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). Determining if lost profits are compensable is a legal question. Poly-Am., L.P. v. GSE Lining Tech., Inc., 383 F.3d 1303, 1311 (Fed.Cir.2004). However, once we have determined that a viable legal theory exists, we must assume the evidentiary facts were resolved in a way to support the jury’s verdict, and our review is limited to whether those inferred factual findings are supported by substantial evidence. Hebert v. Lisle Corp., 99 F.3d 1109, 1114-15 (Fed.Cir.1996).
Here, Wechsler’s theory is premised upon diverted sales and price erosion, that Macke International Trade, Ine.’s (“Macke”) infringing sales displaced his ability to make those sales when he subsequently entered the market, and Macke’s lower-priced infringing goods eroded his ability to charge otherwise attainable higher prices. It is uncontested that Wechsler was not selling a competing product during the infringement period, but he was making preparations to enter the market during that period and then did enter the market less than a year later. As a matter of law, this is sufficient to entitle a patent owner to lost profits if proven. Cf. Rite-Hite Corp., 56 F.3d at 1545.
Macke’s contention that a patent owner must be selling a competing product during the infringement period to recover lost profits is incorrect. Indeed, we previously have rejected such a contention. See Hebert, 99 F.3d at 1119-20. Instead, we recognized that valid legal theories may exist in which profits were lost despite the pat-entee not having a competing product on the market, and we concluded that it was for the trier of fact to determine whether *1298 any such theory was sufficiently proven. Id. (“Although it would be incorrect to bar a patentee who is not yet manufacturing the product from proving that its actual damages were larger than a reasonable royalty, the burden on a patentee who has not begun to manufacture the patented product is commensurately heavy.” (citation omitted)).
Moreover, logic dictates that a patentee may still suffer lost profits despite an inability to manufacture during the infringement period. As Wechsler argues here, subsequent sales by the patentee may be preempted by the earlier infringing sales and those earlier infringing sales may also erode the market price. Accordingly, because Wechsler’s absence from the market and inability to enter the market during the infringement period is not a per se bar to recovering lost profits, our review is reduced to whether the jury’s presumed factual findings are supported by substantial evidence.
The jury was presented with expert testimony that Wechsler could have sold every infringing unit sold by Macke but for the infringement. The expert’s conclusion was premised on the lack of a suitable noninfringing alternative product and demand for the patented product. On appeal, Macke contends that its noninfring-ing product (the Handi-Drink 2), which was developed nearly one year after the current suit was filed, was a suitable alternative. Determining whether a nonin-fringing alternative was available during the infringement period and whether it was suitable are factual issues. See Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1354 (Fed.Cir.1999). It is true that a noninfringing alternative need not be on the market during the infringement period to factor into a lost profits analysis. E.g., id. at 1349-55. However, “[wjhen an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time.” Id. at 1353 (citation omitted). The burden then falls on the infringer to prove availability, and the fact-finder “must proceed with caution” in assessing such proof. Id.
Here, Anthony O’Rourke, Macke’s president, testified that it took nearly one year to develop the Handi-Drink 2 and bring it to market. This testimony supports the jury’s presumed finding that it was not available during the infringing period. See Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1123 (Fed.Cir.2003) (noting the efforts required to bring a product to market in concluding it was not available during the infringement period). In addition, the jury’s presumed finding that the Handi-Drink 2 is not a suitable alternative is supported by testimony that it lacked key features and the functionality of Wechsler’s product. TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 901 (Fed.Cir.1986) (“A product lacking the advantages of that patented can hardly be termed a substitute ‘acceptable’ to the customer who wants those advantages.”) (quoting Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1162 (6th Cir.1978)). With evidence of demand for the product and no suitable alternative, the jury was free to reasonably conclude that Wechsler would have made the sales made by the infringer.
Finally, Macke contends that Wechsler failed to prove the amount of damages he suffered. However, the jury was presented evidence on the amount of damages, including the pricing of similar goods on the market, the lack of suitable alternatives, Wechsler’s manufacturing costs, price erosion, and expert testimony concerning the calculation of damages. The jury presumably found this evidence credible. Accordingly, in light of the absence of *1299 proof a suitable alternative, it was free to conclude that Wechsler would have made all of the sales made by Macke. See State Indus., Inc. v. Mor--Flo Indus., Inc., 883 F.2d 1573, 1578 (Fed.Cir.1989). Bearing in mind that “the patent owner’s burden of proof is not an absolute one, but rather a burden of reasonable probability,” Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065 (Fed.Cir.1983), and that “when the amount of the damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer,” id., substantial evidence supports the jury’s determination of the damages amount. I would affirm the jury’s award of lost profits.